# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 85
Gregg Lubonty,
  Appellant,
   v.
U.S. Bank National Association, &c.,
  Respondent.

Peter K. Kamran, for appellant.
Schuyler B. Kraus, for respondent.

GARCIA, J.:

New York law tolls the statute of limitations where "the commencement of an action has been stayed by a court or by statutory prohibition" (CPLR 204 [a]). Federal bankruptcy law automatically stays the commencement or continuation of any judicial proceedings

against a debtor upon the filing of a bankruptcy petition (see 11 USC § 362 [a]).  We must determine whether the bankruptcy stay qualifies as a "statutory prohibition" under CPLR 204 (a), and, if so, whether a party may later avail itself of the toll where, at the time the stay was imposed, that party had a pending action asserting the same claim.  For the reasons set forth below, we answer yes to both questions, and affirm the order of the Appellate Division.

I.

The relevant procedural history spans two foreclosure actions, two bankruptcy petitions, and the instant action to cancel and discharge the mortgage.  In 2005, plaintiff Gregg Lubonty took out a $2.5 million mortgage on a property in Southampton, New York.  Less than two years later, he defaulted on his mortgage payments.  On June 11, 2007, defendant U.S. Bank National Association's predecessor in interest, American Home Mortgage Acceptance, Inc. (AHMA), accelerated plaintiff's mortgage and commenced a foreclosure action.  For purposes of this appeal, we assume that at this point the six-year statute of limitations on the foreclosure claim was triggered (see CPLR 213 [4]).  Just two weeks later, before his answer in the first foreclosure action was due, plaintiff filed a bankruptcy petition in federal court invoking the automatic stay and barring continuation of the first foreclosure action.  On November 24, 2009, approximately 882 days after initially filing, plaintiff voluntarily dismissed the first bankruptcy action and the stay was lifted.  On January 14, 2010, AHMA filed for default judgment in the first foreclosure action.  On September 27, 2010, the trial court granted plaintiff's ex parte application to

dismiss the action as abandoned.[1]

Subsequently, AHMA assigned plaintiff's mortgage to defendant and in June 2011 defendant commenced a foreclosure action. On September 30, 2011, plaintiff moved to dismiss the second foreclosure action for improper service. Before the return date on that motion, however, plaintiff once again filed for bankruptcy, and an automatic bankruptcy stay was again imposed, prohibiting continuation of the second foreclosure action for 769 days.

On November 26, 2013, the bankruptcy court ordered the property and three other properties, with a combined market value of approximately $11 million, released to plaintiff from the bankruptcy estate in return for two payments totaling $25,000. On April 8, 2014, the bankruptcy trustee notified the court in the second foreclosure action that the stay was no longer in effect. The stay of the second foreclosure action was lifted.[2] Plaintiff's motion to dismiss for improper service was still pending and defendant filed its opposition on June 2, 2014, the day after plaintiff made the final payment releasing the

_____

[1] In dismissing, the trial court in the first foreclosure action reasoned that "Plaintiff did not seek a default judgment as against Defendant mortgagor . . . until January 14, 2010, approximately thirty months after the action was commenced." No mention is made of the first bankruptcy action; the court only notes that AHMA "has failed to offer any explanation for the extensive delay." Excluding the time the action was stayed by the first bankruptcy action, less than a month had elapsed from the time plaintiff's answer was due to when defendant filed for default judgment (see CPLR 3215 [c]).

[2] Although the exact date on which the stay was lifted is uncertain (November 26, 2013, April 8, 2014, or June 1, 2014), the choice among the dates does not change the result, and therefore for purposes of this opinion the earliest date will be used to calculate the limitations period (accord Lubonty v U.S. Bank N.A., 159 AD3d 962, 964 [2d Dept 2018]).

property from his bankruptcy estate.  Plaintiff replied on June 12, 2014.  On October 21,

2014, the court dismissed the second foreclosure action for improper service of process.[3]

Two weeks later, plaintiff filed the instant action under Real Property Actions and

Proceedings Law (RPAPL) § 1501 (4) to discharge the mortgage, asserting that the statute

of limitations on defendant's foreclosure claim had expired.[4]  Defendant moved to dismiss

the action arguing that the statute of limitations on its foreclosure claim had not, in fact,

expired because it was tolled while the bankruptcy stay was in effect.

Supreme Court dismissed, agreeing with defendant that "[u]nder [the provisions of

CPLR 204 (a) and 11 USC § 362 (a) (1)], the applicable statute of limitations is tolled for

the period of time during which a stay or prohibition is in effect."  The Appellate Division

unanimously affirmed, concluding that "plaintiff's contention that CPLR 204 (a) does not

apply here because the earlier foreclosure actions had already been commenced when the

petitions in bankruptcy were filed is without merit" (Lubonty, 159 AD3d at 964).  Applying

CPLR 204 (a), the Appellate Division determined that the statute of limitations for

defendant's foreclosure claim was extended until December 2017 (id.).  This Court granted

---

[3] In dismissing the action, the trial court noted the "apparently inconsistent positions taken by [plaintiff] in the Bankruptcy proceeding, claiming that the property was of inconsequential value due to the pending foreclosure action and the position taken in the instant case."  In fact, this representation by plaintiff to the trustee was used to justify the bankruptcy estate's sale to plaintiff of four properties valued at $11 million for a total price of $25,000.

[4] RPAPL § 1501 (4) provides that where the statute of limitations for commencement of a foreclosure action on a mortgage has expired, a person with an interest in real property subject to the mortgage may maintain an action "to secure the cancellation and discharge of record of such encumbrance."

plaintiff leave to appeal.[5]

## II.

Whether the automatic bankruptcy stay constitutes a "statutory prohibition" under CPLR 204 (a) is an issue of first impression for this Court. The issue need not detain us long. The bankruptcy stay provision expressly prohibits the "commencement or continuation" of any covered action (11 USC § 362 [a] [1])—it is a blanket ban on filing or continuing lawsuits against the debtor (see infra 9-10). It is true that an aggrieved party may seek relief from the automatic stay by application to the bankruptcy court (see 11 USC § 362 [d]). But the need to seek judicial relief from the automatic stay means the creditor is otherwise prohibited from proceeding, and there is no guarantee that the bankruptcy court will favorably exercise its discretion (see id. § 362 [d] [1]). It is therefore clear that section 362 (a) is a "statutory prohibition" within the plain meaning of CPLR 204 (a).

## III.

The issue then becomes whether the toll provided in CPLR 204 (a) is available to a claimant who, when the bankruptcy stay was imposed, had already commenced an action against the debtor—later dismissed—on the claim now reasserted. In interpreting this statute, our goal is to give force to the intent of the Legislature and we therefore begin with the plain text—"the clearest indicator of legislative intent" (Majewski v Broadalbin-Perth

---

[5] The parties notified this Court that defendant filed a third foreclosure action concerning the subject property on December 14, 2017.

Cent. Sch. Dist., 91 NY2d 577, 583 [1998]).  In a manner consistent with the text, we may look to the purpose of the enactment and the objectives of the Legislature (see Albino v Kirby, 36 NY2d 526, 530-531 [1975]).  We must also "interpret a statute so as to avoid an unreasonable or absurd application of the law" (People v Garson, 6 NY3d 604, 614 [2006] [internal quotation marks omitted], citing People v Santi, 3 NY3d 234, 244 [2004]).  Applying those principles here, plaintiff's cramped reading of CPLR 204 (a), one that produces inequitable and potentially absurd results, must be rejected.

A.

CPLR 204 (a) provides, "[w]here the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced."  The result here depends on our reading of the term "commencement."

Plaintiff argues that it is impossible for defendant to have been prohibited from "commencing" an action because a foreclosure action had been commenced prior to plaintiff's bankruptcy filing.  Application of plaintiff's rule would be as follows:  Because defendant filed the first foreclosure claim and defendant responded by filing a bankruptcy petition, invoking the automatic stay, commencement of that first action was not "stayed" under the statute and the toll is inapplicable.  And when defendant filed a second foreclosure action, and plaintiff again responded by again filing a bankruptcy petition that invoked the automatic stay, "commencement" of that second action was not stayed, once again making the toll inapplicable (see dissenting op at 4-5).  As a result, the six-year statute

of limitations would have expired on June 11, 2013—a time when the bankruptcy stay was in effect prohibiting any action against plaintiff. Plaintiff's brand of literalism quickly loses sight of the forest for the trees, producing an outcome antagonistic to the purpose and design of the tolling provision (see New York Trust Co. v Commr. of Internal Revenue, 68 F2d 19, 20 [2d Cir 1933] [Hand, J.]). That interpretation must be rejected.

Neither this Court nor the Legislature has restricted the term "commencement" to the first time a party files a complaint asserting a cause of action; instead the term may also include the commencement of subsequent actions asserting the same claim (cf. Carrick v Cent. Gen. Hosp., 51 NY2d 242, 246 [1980] ["plaintiff commenced a second action by serving defendants with a summons and complaint" (emphasis added)]; CPLR 205 [a] [permitting a plaintiff, in certain circumstances, to "commence a new action" after termination of a prior action]). Likewise, a toll operates to compensate a claimant for the shortening of the statutory period in which it must commence—or recommence—an action, irrespective of whether the stay has actually deprived the claimant of any opportunity to do so (see Matter of Hickman, 75 NY2d 975, 977 [1990] [holding that the limitations period was extended even though the stay ended ten months before the original limitations period would have expired]).

Here, in ruling on plaintiff's claim that the mortgage should be discharged, the court must look to whether the "applicable statute of limitation for the commencement of an action to foreclose" had expired (RPAPL § 1501 [4]). Because the two bankruptcy stays prevented defendant from commencing a foreclosure action for at least 1651 days, that time

is not part of the time within which such an action must be commenced.  Put another way, in determining whether the statute of limitations on a foreclosure action had expired when plaintiff filed this RPAPL action, the duration of any bankruptcy stay must be excluded, regardless of whether an earlier action on the same claim had been initiated or was pending when the stay was imposed. [6]

This interpretation of "commencement" promotes the purpose of CPLR 204 (a) and, unlike plaintiff's proposed rule, is reconcilable with both the bankruptcy stay's effect, and the policies underlying the enforcement of limitations periods.

## B.

The New York tolling statute is an old one, reaching back into the days of equity (3 Report of the Commissioners Appointed to Revise the Statute Laws of This State, ch 4, at 16 [1828] ["Whenever the commencement of any suit shall be stayed by an injunction of any court of equity, the time during which such injunction shall be in force, shall not be deemed any portion of the time in this Chapter limited, for the commencement of such suit"]), modified first to reflect the merger of law and equity with the enactment of the Field Code in 1848 (Nathan Howard, Code of Procedure of the State of New York,

---

[6] Commentators similarly use broad terms to describe the effects of the tolling provision (see Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2201:6 at 10 ["If a federal statute, such as the (bankruptcy stay) bars an action against the debtor, the statute of limitations period is tolled during the period of the stay"]; Weinstein-Korn-Miller, NY Civ Prac ¶ 204.00 [2d ed] ["In general, the period of the stay or statutory prohibition is added to the period of limitation"]).

Unabridged 440 [1867] ["When the commencement of an action shall be stayed by injunction, the time of the continuance of the injunction shall not be part of the time limited for the commencement of the action"]), and later to include statutes having the same effect (id. [noting that the statute was amended to include the "statutory prohibition" language in 1849]).  Having remained practically unchanged for almost two centuries, this rule has strong roots in the equitable principle that plaintiffs should not be penalized for failing to assert their rights when a court or statute prevents them from doing so (cf. Matter of Feinberg, 18 NY2d 499, 507 [1966] ["The purpose of a Statute of Limitations is to penalize claimants for sleeping on their rights"]).

We have concluded that the bankruptcy stay is a "statutory prohibition" within the ambit of this equitable tolling provision, and we must therefore look to the effect of the bankruptcy stay on the course of the litigation.  The federal statutory restraint is indeed broad in application.  "Nothing is more basic to bankruptcy law than the automatic stay and nothing is more important to fair case administration than enforcing stay violations" (In re Lehman Bros. Holdings, Inc., 433 BR 101, 112 [Bankr SD NY 2010]).  The effects of that stay are wide-ranging and limit virtually all judicial action against the debtor and any co-debtors:  "The automatic stay is designed to provide blanket relief from creditor action" (In re Newberry, 604 BR 37, 40 [Bankr ED Mich 2019]), and any exceptions from the stay are narrowly written and "strictly construed" (In re Montgomery, 525 BR 682, 693 [Bankr WD Tenn 2015]).  Courts have also held that the bankruptcy stay not only prevents an action from being continued, but also from being discontinued and recommenced (see

U.S. Bank N.A. v Joseph, 159 AD3d 968, 970-971 [2d Dept 2018]). Moreover, the effective date of any stay is controlled by the debtor: the stay is automatic and "springs into being upon the filing of the bankruptcy petition" and "operates without the necessity for judicial intervention" (In re Soares, 107 F3d 969, 976 [1st Cir 2014] [internal quotation marks and citation omitted]). In short, the stay brings any potential and ongoing litigation to a standstill at a debtor's behest.

Plaintiff's use of the automatic stay, and his control over the timing of its application and revocation, had the effect of halting the pending litigation and staying the commencement of subsequent foreclosure actions for more than four years. In both foreclosure actions, plaintiff filed for bankruptcy and obtained an automatic stay at critical stages of the litigation: in the first case, pre-answer, and in the second before defendant could respond to the motion to dismiss for lack of personal jurisdiction. In both cases, plaintiff acted to lift the stay—either by dismissing the bankruptcy case or "purchasing" the property from the bankruptcy estate—and shortly thereafter obtained dismissal of the relevant foreclosure action. Defendant was clearly prevented from asserting its rights as a direct result of the actions of the plaintiff.

In addition to the inequity and gamesmanship it would encourage, application of a "pending action" rule urged by plaintiff would raise a host of practical issues. For example, given the federal rules regarding stays of an action against codebtors, if one debtor declares bankruptcy, a plaintiff cannot proceed independently against a codebtor even if the codebtor has not filed for bankruptcy (see Deutsche Bank Natl. Trust Co. v DeGiorgio, 171

AD3d 1267, 1268, n 2 [3d Dept 2019], citing 11 USC § 1301 [a]). Application of a "pending action" rule could produce absurd results in such a situation: If a codebtor is not named in the original suit, or the action against the codebtor is dismissed for some reason prior to the application of the bankruptcy stay, the "pending action" rule would make suit untimely against the bankrupt debtor but not against the codebtor. Application of the rule adopted here would make both subject to the toll as both were subject to the stay.

In another scenario, under the "pending action" rule, an unasserted claim the creditor "slept on," arising out of the same transaction or series of transactions as the claim interposed, would get the benefit of the toll, while the claim that was previously asserted would not. Yet another absurd result. The rule adopted here would apply the toll equally to claims arising from same transaction.

It is not surprising therefore that courts in the Second and Third Departments, as well as a federal court applying New York law, under circumstances where a prior action was pending when the bankruptcy stay began, have each interpreted CPLR 204 (a) as excluding the time the stay was in effect from the statute of limitations (see DeGiorgio, 171 AD3d at 1268; Joseph, 159 AD3d at 968; In re Strawbridge, 2012 WL 701031, *9-10 [SD NY Mar. 6, 2012]).[7] No court has adopted plaintiff's interpretation.

---

[7] The Third Department, in adopting the rule we apply here, found the Second Department's reasoning in this case persuasive (see DeGiorgio, 171 AD3d at 1268, citing Lubonty, 159 AD3d at 963-964).

C.

The dissent adopts as a refrain plaintiff's argument that the "statutory scheme" of the CPLR requires a different result. Specifically, plaintiff contends that CPLR 205 (a) demonstrates the Legislature's intent for the toll to apply only in cases where no action on the claim was commenced before the bankruptcy stay became effective. CPLR 205 (a) provides a six-month grace period to "commence a new action upon the same transaction or occurrence or series of transactions or occurrences" where the previous action has been dismissed for any "other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits" (CPLR 205 [a] [emphasis added]). Plaintiff asserts that the Legislature's enactment of this savings provision shows that it contemplated specific circumstances where plaintiffs should be allowed to extend the statute of limitations for their claims, and that a failure to obtain personal jurisdiction over the defendant was not one of them. This argument begs the question of whether CPLR 204 (a) applies to toll the statute of limitations under these circumstances. Because it does, the Legislature's contemplation of which grounds for dismissal earn the protections of the grace period is irrelevant—the statute of limitations has not expired, and the grace period in this case is unnecessary. There may well be other provisions within the CPLR that could provide relief to other litigants in other circumstances. CPLR 204 (a), however, provides defendant with relief in this case.

Plaintiff also argues that the bankruptcy statute itself provides the primary

mechanism by which a defendant may refile a claim—namely, the 30-day grace period provided in 11 USC § 108 (c). This argument is also unavailing: if another statute tolls the action longer than 30 days section 108 (c) applies the longer toll, rather than the 30-day grace period (see Pettibone Corp. v Easley, 935 F2d 120, 121 [7th Cir. 1991] ["Federal Law assured the plaintiffs 30 days in which to pick up the baton; if states want to give plaintiffs additional time, that is their business"]; see also HSBC Bank USA, N.A. v Crum, 907 F3d 199, 206 [5th Cir 2018]; Siegel, NY Prac § 51 [6th ed]).

IV.

Applying the above rule to the instant action, defendant's claims were not time-barred when Supreme Court granted defendant's motion to dismiss.[8] The statute of limitations for a foreclosure claim is six years (CPLR 213 [4]). Here, the limitations period began to run on June 11, 2007, upon AHMA's acceleration of plaintiff's mortgage. The property was subject to bankruptcy stays for at least 1651 days, during which defendant was statutorily prohibited from commencing any action concerning the property. Adding the duration of the stay to the six-year statute of limitations period, defendant had until on or about December 18, 2017 to commence the foreclosure action. Dismissal of plaintiff's action to discharge the mortgage was thus proper. Accordingly, the order of the Appellate

---

[8] The accusation that the Court, in interpreting and applying the CPLR 204 (a) tolling provision, is somehow "ignoring" or "disregarding" the law is unwarranted (dissenting op at 5-6; see CPLR 201 [an action must be commenced within the time specified in CPLR article 2 and "no court shall extend the time limited by law for the commencement of an action"]). "[A]lthough [the statute of limitations] is subject to a variety of tolls and extensions . . . [it] is not subject to a discretionary judicial extension" (Siegel, NY Prac § 33 at 51 [6th ed] [emphasis added]).

Division should be affirmed, with costs.

Lubonty v U.S. Bank National Association

No. 85

STEIN, J. (dissenting):

The express language of CPLR 204 (a) is unambiguous: "[w]here the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced"

- 1 -

(emphasis added).  Consequently, where a stay is instituted <u>after</u> an action is commenced—that is, where "the commencement of [the] action [is not] stayed"—section 204 (a) is inapplicable.  In my view, the majority reads the word "commencement" out of section 204 (a), thereby impermissibly extending the statute of limitations by judicial fiat.  Therefore, I respectfully dissent.

A brief restatement of the complicated procedural posture of this case—which includes two foreclosure actions, two bankruptcy proceedings, and the present action to cancel and discharge the mortgage—is necessary.  In 2005, plaintiff executed a note with nonparty American Home Mortgage Acceptance, Inc. (AHMA), secured with a mortgage on residential real property (the subject property).  In 2007, AHMA commenced the first foreclosure action, alleging that plaintiff had defaulted on the mortgage and requesting payment in full.  Approximately two weeks later, plaintiff commenced a bankruptcy proceeding, automatically staying continuation of the first foreclosure action (<u>see</u> 11 USC § 362).  This stay was lifted in November 2009, after plaintiff's bankruptcy petition was dismissed.  The first foreclosure action was subsequently dismissed as abandoned in September 2010.[1]

In June 2011, after being assigned the mortgage, defendant U.S. Bank National Association (U.S. Bank) commenced a second foreclosure action, based upon the same default alleged in the first foreclosure action.  Plaintiff moved to dismiss the complaint

---

[1] Whether AHMA could have avoided dismissal by arguing that the bankruptcy stay prevented it from prosecuting the action, and whether the first foreclosure action was properly dismissed as abandoned, are not questions before the Court on this appeal.

based upon improper service and, shortly thereafter, commenced a second bankruptcy proceeding, which stayed the second foreclosure action before U.S. Bank had an opportunity to respond to plaintiff's motion to dismiss. The subject property was thereafter released from the bankruptcy estate, and the stay was lifted. In October 2014, Supreme Court granted plaintiff's motion to dismiss the second foreclosure action, concluding, on the evidence presented, that U.S. Bank had failed to properly serve plaintiff under CPLR 308 (2).

Plaintiff subsequently commenced this action against U.S. Bank pursuant to RPAPL 1501 (4), seeking to cancel and discharge the mortgage on the subject property because the six-year statute of limitations applicable to commencement of a foreclosure action had expired (see CPLR 213 [4]). U.S. Bank moved to dismiss the complaint pursuant to CPLR 3211 (a) (7), asserting, as relevant here, that the two bankruptcy stays tolled the statute of limitations pursuant to CPLR 204 (a) such that it was still possible to timely commence a third foreclosure action. Plaintiff opposed the motion to dismiss, arguing that CPLR 204 (a) was inapplicable because each bankruptcy stay became effective after each mortgage foreclosure action was commenced, and each stay was terminated before each foreclosure action was dismissed; therefore, plaintiff contended that, pursuant to the express language of CPLR 204 (a), the statute of limitations was not tolled insofar as "the commencement of an action" was never stayed. Plaintiff advances the same arguments on this appeal.

Because this case presents a question of statutory interpretation regarding CPLR 204 (a), we must "attempt to effectuate the intent of the [l]egislature, and where the

statutory language is clear and unambiguous," we must interpret the statute "so as to give effect to the plain meaning of the words used" (Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976] [internal citations omitted]; see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]).  It is also well established that "'resort must be had to the natural significance of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction . . . courts have no right to add or take away from that meaning'" (Majewski, 91 NY2d at 583, quoting Tompkins v Hunter, 149 NY 117, 122-123 [1896]).

CPLR 204 (a) is entitled, in pertinent part, "[s]tay of commencement of action" and, as previously noted, provides that, "[w]here the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced" (CPLR 204 [a] [emphasis added]).  Although the majority correctly states that the outcome of this case is dependent upon our reading of the term "commencement," the majority neglects the critical point that "commencement" is defined in CPLR 304.  In that regard, the legislature has provided that "[a]n action is commenced by filing a summons and complaint or summons with notice in accordance with [CPLR 2102]" (CPLR 304 [a]).  In light of that definition, CPLR 204 (a) could not be clearer: a toll of the statute of limitations is available only where a would-be plaintiff is precluded from duly filing the applicable papers—thereby commencing an action—as the result of a stay or statutory prohibition.

Here, it is undisputed that the first foreclosure action was commenced under CPLR 304 (a) before any bankruptcy stay took effect, and the second foreclosure action was commenced in the time period between the first and second bankruptcy stays, i.e. when no stay was in effect. Accordingly, because the bankruptcy stays did not prevent the commencement of a foreclosure action regarding the subject property, the toll codified in CPLR 204 (a) does not apply.

Nevertheless, the majority holds that "the duration of any bankruptcy stay must be excluded, regardless of whether an earlier action on the same claim has been initiated or was pending when the stay was imposed" (majority op at 8). Stated differently, according to the majority, whenever a stay is interposed, the statute of limitations is extended for the length of that stay, even if the action was already commenced and is subsequently terminated. However, if the legislature intended to enact such a rule, it easily could have made CPLR 204 (a) applicable whenever a stay prevents a party from "commencing or continuing a civil action"—the phrase used in the Federal Bankruptcy Code (11 USC § 108 [c]; see 11 USC § 362 [a] [1]). Instead, the legislature chose to enact a statute that links application of the toll to "commencement," a term defined by the CPLR. Therefore, the rule adopted by the majority today disregards two fundamental principles of law. First, it renders the phrase "the commencement of" superfluous, in contravention of our rules of statutory interpretation (see Majewski, 91 NY2d at 587; Jensen v General Elec. Co., 82 NY2d 77, 86 [1993]). Second, the majority's rule extends the statute of limitations without regard to the plain language of the tolling provision, thereby ignoring the legislature's

express direction that "[n]o court shall extend the time limited by law for the commencement of an action" (see CPLR 201).

The majority reaches its result by relying on amorphous notions of equity, positing that application of the express statutory language would produce absurd results and encourage gamesmanship. To be sure, "courts should construe [statutes] to avoid objectionable, unreasonable[,] or absurd consequences" (Long v State of New York, 7 NY3d 269, 273 [2006]; see New York State Bankers Assn. v Albright, 38 NY2d 430, 437 [1975]). However, the majority struggles to identify any such consequences that result from applying the unambiguous text of CPLR 204. First, the majority states that an absurd result would occur where an action is commenced against one codebtor before imposition of a bankruptcy stay and against a second codebtor after the same stay is lifted. The majority asserts that, in this scenario, the literal effect of the plain language of CPLR 204 (a) is that the causes of action against each codebtor would become untimely at different times (see majority op at 10-11). Of course, it might be the case that the relation-back doctrine would apply in this scenario, avoiding the consequence the majority presumes (see CPLR 203 [c]; Buran v Coupal, 87 NY2d 173, 178 [1995]). In any event, even if the majority were correct, it is wholly unclear why we should rewrite CPLR 204 (a) to avoid such an outcome. That the application of the statute of limitations may vary between different parties or claims is a reality of complex civil litigation.

The majority further posits, more generally, that enforcing the statute as written would reward parties that delay commencement of an action, because a party that

commences an action closer in time to the expiration of the statute of limitations is more likely to benefit from a CPLR 204 (a) toll if a stay goes into effect, whereas a party that commences an action before any stays are imposed, will receive no toll. The majority overlooks that a party who commences an action within the statute of limitations has not engaged in dilatory conduct. In other words, enforcing the statute as written does not encourage delay beyond the limitations period that the legislature has deemed appropriate. Thus, the majority's attempt to grasp for scenarios under which the express language of the statute could create a questionable outcome is unpersuasive.

Furthermore, the statutory scheme belies the majority's conclusion that CPLR 204 (a), as written, creates undesirable results. To ascertain whether the express language of CPLR 204 (a) creates absurd results, we must examine how that toll operates within the larger statutory scheme of the CPLR as a whole (see e.g. Matter of Mestecky v City of New York, 30 NY3d 239, 243 [2017]; Matter of Wallach v Town of Dryden, 23 NY3d 728, 744 [2014]). Generally, under the CPLR, the limitations period runs from the date a claim accrues until it is interposed by filing—that is, until the action is commenced (see CPLR 203 [a], [c]). In other words, once an action is commenced, it either is or is not time-barred by the applicable statute of limitations.[2] However, U.S. Bank seeks to invoke a toll despite

---

[2] The majority suggests that "[n]either this Court nor the Legislature has restricted the term 'commencement' to the first time a party files a complaint asserting a cause of action" (majority op at 7). But the CPLR directs that the limitation periods be calculated from accrual until commencement (CPLR 203 [c]) and, once a party commences an action, there generally would be no occasion to recommence the same action while the first action is pending. Indeed, if a party were to recommence the same action, the court could dismiss

its timely interposition—i.e., commencement—of the second foreclosure action because that action was dismissed after the expiration of the applicable limitations period as a result of U.S. Bank's failure to properly serve the summons and complaint on plaintiff. Conveniently, the CPLR contains a provision addressing this precise predicament—namely, where an action is timely commenced, but subsequently terminated after the statute of limitations period expires. Specifically, CPLR 205 (a) provides, in relevant part:

> "If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination."

Therefore, without assistance from the judiciary, the legislature has provided a remedy for the situation faced by U.S. Bank where an action is terminated after the limitations period has expired. Read in the context of the broader statutory scheme—specifically, CPLR 203 and 205 (a)—it was perfectly reasonable that the legislature chose to limit the application of CPLR 204 (a) to situations arising <u>before</u> commencement.[3]

---

that action (<u>see</u> CPLR 3211 [a] [4]). Moreover, under RPAPL 1301 (3), U.S. Bank could not have commenced a third foreclosure action while the second foreclosure action was pending "without leave of the court."

[3] I agree with the majority that, if CPLR 204 (a) applied, then U.S. Bank would have had no need to resort to CPLR 205 (a) because it would have had more than six months remaining on the statute of limitations to recommence a third foreclosure action after termination of the second foreclosure action. However, this misses the point of looking to CPLR 205 (a) in this case. As noted, before proclaiming that the unambiguous language of a statute creates absurd results, it is prudent to see how that statute fits within the broader

Here, of course, the second foreclosure action was dismissed for U.S. Bank's failure to effectuate proper service, a personal jurisdiction defect expressly excluded from the benefit of CPLR 205 (a) (see CPLR 205 [a]; Keane v Kamin, 94 NY2d 263, 265 [1999]; Dobkin v Chapman, 21 NY2d 490, 500-501 [1968]). That a party in U.S. Bank's position is without a remedy under CPLR 205 (a) is the legislature's intended consequence of CPLR article 2; to that end, the legislature amended CPLR 205 (a) in 1992 to add the personal jurisdiction exception (see L 1992, ch 216).[4] If U.S. Bank's action had been dismissed outside the statute of limitations for any reason other than the four exceptions to CPLR 205 (a), it would have had six months to recommence the action. In other words, that U.S. bank was unable to timely commence a third foreclosure action did not result from an absurd reading of CPLR 204 (a). Rather, it was the legislature's intended result.

The majority disregards the legislative scheme of the CPLR in one additional respect that is noteworthy. CPLR 306-b requires that service be completed within 120 days

---

legislative scheme. The majority reads CPLR 204 (a) in a vacuum, despite its obvious relation to other provisions of CPLR articles 2 and 3.

[4] Before 1992, the personal jurisdiction exception to CPLR 205 (a) existed in case law only (see Markoff v South Nassau Community Hosp., 61 NY2d 283, 286 [1984]). In Markoff, this Court held that CPLR 205 (a)—which applies, by its plain terms, only where an action is "timely commenced," was not triggered in the absence of proper service because, under the then-existing statutory regime, an action was commenced by service, not filing. Notably, the Markoff Court recognized that "commence[ment]" could not be read out of CPLR 205 (a)—a statute related to limitation periods. When the legislature revised the CPLR to adopt commencement by filing, it expressly codified the Markoff rule in CPLR 205 (a), even though the Court's rationale no longer applied under the new statutory scheme. This history reinforces that the inapplicability of CPLR 205 (a) to the facts of this case was intentional.

of the commencement of an action, but provides that, "[i]f service is not made upon a defendant within [that] time" the court may, "upon good cause shown or in the interest of justice, extend the time for service." Rather than move to extend its time to complete proper service under this provision, U.S. Bank unsuccessfully chose to litigate the propriety of its original service.[5] Additionally, U.S. Bank could have moved for relief from the stay in the bankruptcy proceeding in order to effectuate proper service (see 11 USC 362 [d] [4]; [f]).[6] Given U.S. Bank's failure to even attempt to utilize these existing statutory remedies, I disagree with the majority's conclusion that interpreting the statute as written and as advanced by plaintiff would be inherently unreasonable. We should not lose sight, as the majority has, of the relevant statutory scheme when interpreting the express language of the statute.

Finally, although the majority proclaims that lower courts have unanimously read CPLR 204 (a) to disregard the term "commencement," it is notable that, of the three cases cited in support of this proposition, one relies upon the Appellate Division order being reviewed on this appeal (see Deutsche Bank Natl. Trust Co. v DeGiorgio, 171 AD3d 1267,

---

[5] Here, only 132 days had passed between the commencement of the second foreclosure action and the institution of the bankruptcy stay. When the bankruptcy stay was lifted, U.S. Bank likely had a strong argument that the court should afford it additional time to correct its defective service considering that stay.

[6] Alternatively, U.S. Bank could have moved to reopen the bankruptcy proceeding (see 11 USC § 350 [b]) or attempted to take advantage of the 30-day window provided by 11 USC § 108 (c) (2) for recommencing an action where the applicable limitations period has expired.

1268 [3d Dept 2019]) and none include any meaningful analysis of the statutory language or scheme, or of the legislative intent underlying CPLR 204 (a).

In sum, the express language of CPLR 204 (a) evinces the legislature's unmistakable intent to provide a statute of limitations toll only "where [the] commencement of an action has been stayed." I would hold that "commencement" should be read as defined in the CPLR, itself. Contrary to the majority's view, there is nothing inherently absurd about applying the words chosen by the legislature under the facts of this case, in light of U.S. Bank's failure to avail itself of other statutory devices that likely would have prevented a dismissal of the second foreclosure action based upon improper service. Nor, considering the broader statutory scheme, can it be said that the plain language of CPLR 204 (a) encourages gamesmanship or creates absurd results. Therefore, I would reverse the order of the Appellate Division.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed, with costs. Opinion by Judge Garcia. Chief Judge DiFiore and Judges Wilson and Feinman concur. Judge Stein dissents in an opinion in which Judges Rivera and Fahey concur.

Decided November 25, 2019